582 F.2d 1291
 Richard C. LOE, Appellant,
v.
Louis L. ARMISTEAD, Sheriff, City of Alexandria, Mr. Fox,
Captain, Alexandria City Jail, Lt. Cherry, Alexandria City
Jail, Mr. Isabelle, Officer, Alexandria City Jail, Mr.
Hollow, Officer, Alexandria City Jail, Lt. Charity,
Alexandria City Jail, Mr. Drew, former Officer of Alexandria
City Jail, Unknown Nurses, Alexandria City Jail, Dr. Novak,
Alexandria City Jail, Mr. Moffitt, U. S. Marshal, Mr.
Morrow, Employee of Alexandria City Jail, William D. Fox, U.
S. Marshal, Appellees.
Richard C. LOE, Appellant,
v.
Mr. MOFFITT, United States Marshal, William D. Fox, United
States Marshal, Unknown United States Marshals, Appellees.
Richard C. LOE, Appellant,
v.
Sheriff ARMISTEAD, Sheriff of the City of Alexandria, Mr.
Fox, Captain at the Alexandria City Jail, Miss or Mrs.
Dodson, Nurse at the Alexandria City Jail, Unknown Nurse at
the Alexandria City Jail, Mr. Cherry, Lieutenant at the
Alexandria City Jail, Mr. Isabelle, Deputy at the Alexandria
City Jail, Mr. Hollow, Deputy at the Alexandria City Jail,
Mr. Charity, Lieutenant at the Alexandria City Jail, and Mr.
Drew, Former Deputy at the Alexandria City Jail, Appellees.
 Nos. 77-2039, 77-2134 and 77-2135.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1978.
Decided Aug. 16, 1978.
 
 Robert S. Catz, Arlington, Va. (Carol Miller and Sandy Tichenor, The Urban Law Institute of the Antioch School of Law, Washington, D. C., on brief), for appellant.
 John E. Greenbacker, Jr., Asst. Commonwealth Atty., Lawrence W. Chamblee, Sp. Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Robert F. McDermott, Asst. U. S. Atty., William L. Cowhig, Commonwealth Atty., Alexandria, Va., on brief), for appellees.
 Before WINTER, BUTZNER and HALL, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 The district court, without requiring an answer, summarily dismissed Richard Loe's Pro se suit against federal officers, state officers and state employees. The suit alleged that, while Loe was in pretrial custody, the defendants deliberately denied him adequate medical treatment for a broken arm and that, while transporting him to Springfield, Missouri, his medical needs arising from the broken arm were ignored by federal marshals. The district court's dismissal was under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief could be granted.[1] The questions before us are whether Loe alleged a cause of action against the state defendants, whether he has a cause of action against the federal defendants and, if so, whether he sufficiently alleged it.
 
 
 2
 We affirm in part, reverse in part and remand for further proceedings.
 
 I.
 
 3
 We state the facts alleged in Loe's Pro se complaint which we must accept as true for the purpose of deciding this appeal since the complaint was dismissed for failure to state a claim:
 
 
 4
 At a time when he was a federal prisoner awaiting retrial on federal charges of bank robbery, Loe was detained in the Alexandria, Virginia local jail under a leasing agreement. On April 18, 1977, at approximately 10:00 a. m., he injured his right arm when he slipped and fell on the basketball court at the jail. Loe was immediately taken to the infirmary. A nurse, whose identity is unknown, examined his arm and gave him pills for the pain. She said that she would notify the jail doctor but cautioned Loe that if hospital care were necessary, the United States marshals would have to be summoned because only they were authorized to transport federal prisoners. Loe was returned to his cell.
 
 
 5
 By noon the condition of his arm had worsened and it was obvious that the arm was broken since it was swollen around the upper forearm and elbow and it was locked in an extraordinary position. Throughout the day, until approximately 6:00 p. m., Loe repeatedly requested that he be taken to the hospital. He was repeatedly told that only the marshals could take him to a hospital and that they had been notified of his injury. Finally, at approximately 9:00 p. m. the jail physician, Dr. Novak, examined the arm. Novak concluded that x-rays would be necessary to determine whether the arm was broken, and Novak told Loe that the marshals would take him to the hospital in a day or so. At 8:30 a. m. the next day, April 19, United States marshals took Loe to a hospital. X-rays showed a fracture of the right arm, so Dr. Novak, who was present in the hospital, placed it in a full cast. Loe was then returned to the Alexandria jail.
 
 
 6
 About two and one-half weeks later, Loe began to experience considerable pain in the arm. After several days of this pain, the marshals returned Loe to the hospital. Dr. Novak examined him and took more x-rays. These showed that the fracture had not healed. Dr. Novak replaced the full cast with a half-cast and said that this should remain on for two weeks.
 
 
 7
 On May 13, 1977, Loe was transferred to the Springfield, Missouri Medical Center for psychiatric observation because he had expressed an intention to defend the federal bank robbery charges against him on grounds of mental incompetency. The trip, which was made by van, required two days of 12 to 13 hours' driving. He was accompanied by two United States marshals. They insisted that he remain handcuffed to his waist throughout the trip, notwithstanding his protests that this restraint increased the pain in his injured arm, which was still in a half-cast. Loe was told that he would receive medical attention when he reached his destination.
 
 
 8
 Loe alleged that while at Springfield he removed the half-cast as per the instructions of Dr. Novak. He does not allege, however, that prior to then the medical condition of his arm required special treatment or that he sought medical care upon his arrival in Springfield. He does claim that his arm has never properly healed, that it is painful and that normal motion has not returned. However, Dr. Novak, who examined him since he was returned to Alexandria, is of a contrary view since the arm is not causing serious pain.
 
 
 9
 Based upon these factual allegations, Loe charged that the defendants, two known and one unknown United States marshals, and various officials, guards, nurses and the physician at the city jail, had violated the eighth amendment in failing to provide prompt and adequate medical care for the injury to his arm, both prior to his leaving the Alexandria City Jail and upon his return. A claim based on the eighth amendment was also made against the marshals who accompanied him to Springfield for their alleged disregard of his medical needs during the trip. Loe concluded with the general allegation that the defendants had "deliberately remained indifferent to the plaintiff's medical needs." His complaint sought damages, both compensatory and punitive, and equitable relief. In particular, it requested a declaration that existing procedures for transporting federal prisoners in state facilities to hospitals were unconstitutional and an order directing the adoption of procedures better suited to ensure adequate care.
 
 II.
 
 10
 The claims against the officials and employees of the Alexandria City Jail, including Dr. Novak, may, of course, be brought under 42 U.S.C. § 1983. But their conduct in most part is inextricably linked with the alleged conduct of the federal marshals. Before we consider whether the facts alleged state a cause of action against the defendants, or any of them, we must first decide whether an action may be maintained against the United States marshals named in the complaint.
 
 
 11
 At the outset, we note that Loe was not a prisoner detained under a judgment of conviction; rather, he was a pretrial detainee. Under such circumstances, the protections that apply to him are found in the due process clause of the fifth amendment, since he was a federal prisoner, rather than in the eighth amendment's prohibition against cruel and unusual punishment. Duran v. Elrod, 542 F.2d 998, 999-1000 (7 Cir. 1976); Detainees of Brooklyn House of Det. for Men v. Malcolm, 520 F.2d 392, 397-98 (2 Cir. 1975); Rhem v. Malcolm, 507 F.2d 333, 337-38 (2 Cir. 1974); Fitzke v. Shappell, 468 F.2d 1072 (6 Cir. 1972). Indeed, in Duran it was held that state pretrial detainees were entitled to greater protection under the due process clause of the fourteenth amendment than that afforded them under the eighth amendment; since "they are convicted of no crime for which they may presently be punished, the state must justify any conditions of their confinement solely on the basis of ensuring their presence at trial." 542 F.2d at 1000.
 
 
 12
 In the instant case, we need not decide the exact scope of the protection that due process provides because we agree with Duran that due process is at least as co-extensive as the guarantees of the eighth amendment; and we think that, under the eighth amendment, Loe has alleged sufficient facts to render his complaint immune to summary dismissal under Rule 12(b)(6).
 
 
 13
 We return therefore to the issue of Loe's rights, if any, against the federal marshals. In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that the victim of an unconstitutional search by federal officers could recover damages from the officers in an action based directly on the fourth amendment. We think that, on the authority of Bivens, damages may be recovered from federal agents on a fifth amendment violation.
 
 
 14
 Although Bivens does not speak directly to the availability of damage remedies derived from other constitutional rights, there would seem to be no principled basis for limiting Bivens to the fourth amendment. Bivens teaches that, at least where there are no special factors counselling hesitation, federal courts may grant traditional damage remedies, as well as equitable relief, to persons whose constitutional rights have been violated. 403 U.S. at 395-97, 91 S.Ct. 1999. Bivens indicated that such special factors might be present where a remedy might implicate questions of federal fiscal policy or where there was an "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." 403 U.S. at 397, 91 S.Ct. at 2005. Another factor might be whether the injury caused by the constitutional deprivation is one for which monetary compensation would normally be appropriate. 403 U.S. at 408-09, 91 S.Ct. 1999 (Harlan, J., concurring).
 
 
 15
 We conclude that no special factors counsel hesitation in this case. Congress has provided no other remedy for the alleged denial of this fifth amendment right. The alleged denial does not raise a question of federal fiscal policy, and "(h)istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." Bivens, 403 U.S. at 395, 91 S.Ct. at 2004. We therefore hold that a damage action may be maintained against the marshals directly under the fifth amendment.
 
 
 16
 This result accords with the preponderance of authority; other courts have readily extended Bivens to create damage remedies against federal officials for violations of constitutional violations other than the fourth amendment.[2] E. g. Dellums v. Powell, 184 U.S.App.D.C. 275, 566 F.2d 167 (1977) (first amendment); Paton v. La Prade, 524 F.2d 862, 869-70 (3 Cir. 1975) (first amendment); Wounded Knee Legal Defense/Offense Comm. v. FBI, 507 F.2d 1281, 1284 (8 Cir. 1974) (sixth amendment); Patmore v. Carlson, 392 F.Supp. 737, 739-40 (E.D.Ill.1975) (eighth amendment). More significantly, in States Marine Lines, Inc. v. Shultz, 498 F.2d 1146 (4 Cir. 1974), we have already held that customs officials who are alleged to have deprived the owner of a cargo of its property without due process of law, under the cloak of federal statutory authority vested in them, may be sued in a Bivens -type action. Thus, finding that both federal and state officers may be liable in damages for their violations of the fifth amendment, we turn to the specific allegations in this case.
 
 III.
 
 17
 It is elementary that a complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The standard of proof for dismissal under Rule 12(b)(6) is demanding because the Federal Rules of Civil Procedure are premised on the notion that disputes should be decided on their facts, as developed through discovery and at trial, rather than on the skill or ineptitude with which the pleadings are drawn. See Bolding v. Holshouser, 575 F.2d 461 (4 Cir. 1978); C. Wright, Federal Courts § 68 (3d ed. 1976). And liberal construction of pleadings is particularly appropriate where, as here, there is a Pro se complaint raising civil rights issues. See Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4 Cir. 1978); Canty v. City of Richmond Police Dept., 383 F.Supp. 1396, 1399-1400 (E.D.Va.1974), Aff'd, 526 F.2d 587 (4 Cir. 1975), Cert. denied, 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976).
 
 
 18
 Of course, whether a complaint states a cognizable claim depends ultimately on the applicable law. Analysis of the legal issues in this case is simplified by the Supreme Court's recent decision in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), with regard to the right to medical treatment under the eighth amendment. Speaking to a state prisoner's claim that inadequate medical treatment had caused him to suffer cruel and unusual punishment, the Gamble Court stated:
 
 
 19
 (A)n inadvertent failure to provide adequate medical care cannot be said to constitute "a(n unnecessary and) wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.
 
 
 20
 429 U.S. 105-06, 97 S.Ct. 292 (emphasis added). After articulating this standard of deliberate indifference, the Court proceeded to examine the sufficiency of the allegations in Gamble's complaint. It concluded that, even under the liberal pleading standards of Haines, the complaint could not be maintained against the defendant doctors because Gamble's exhaustive description in the complaint of his treatment established that he had received extensive medical care and that the doctors were not indifferent to his needs. 429 U.S. at 107-08 and n.16, 97 S.Ct. 285. The Court expressed no opinion on whether a cause of action had been stated against the other defendants.
 
 IV.
 
 21
 We think that, measured by the deliberate indifference standard of Gamble, Loe's allegations regarding the treatment of his broken arm state a claim. A broken arm can be an excruciating injury, and few people would freely choose to delay twenty-two hours or even eleven hours in seeking a doctor's care. Indeed, an indigent could reasonably expect faster treatment at a hospital emergency room. The unusual length of the delay provides a reasonable basis for the inference that there was deliberate indifference to Loe's serious medical needs either on the part of some or all of the state defendants, or, if the marshals were notified as Loe alleged, in their failure to take Loe to a hospital where prompter medical attention was available.
 
 
 22
 We cannot confidently proceed beyond this conjecture, however, because the complaint, unlike the one in Gamble, provides only a sketchy description of the treatment and offers no explanation for the eleven hour delay in examination by Dr. Novak, why he delayed the taking of an x-ray overnight, and why the marshals did nothing until the morning after the accident. On this record, which consists solely of Loe's Pro se complaint, we do not know when the doctor was notified. We do not know whether the doctor, once notified, delayed seeing Loe or, if so, the reasons for the delay. We do not know when the marshals were notified or what they were told. We do not know why the marshals did not take Loe to the hospital until the next day. We express no view on the merits of Loe's case, and we have no knowledge of the proof that Loe may adduce; but Loe's allegations, viewed in the light most favorable to him, assert deliberate indifference on the part of the defendants. Dismissal under Rule 12(b)(6) of his complaint with regard to initial treatment of his broken arm was not proper.[3]V.
 
 
 23
 We reach a different conclusion, however, on the dismissal of the claim arising from the trip to Springfield. The allegations regarding that trip could not conceivably support a finding of deliberate indifference to a serious medical need, nor do we perceive any other lack of due process. Two considerations persuade us to this conclusion. First, there is no indication that Loe's arm was seriously injured at the time of the trip. True, the arm was still in a cast, but Loe alleges no medical restrictions on its use that required special treatment during the trip. Absent a medical necessity for special treatment, it is not unreasonable that one accused of bank robbery, especially one who had formerly pled guilty to the offense, should be subjected to restraints on his physical movement while he was being transported cross-country in a motor vehicle. Second, Loe's failure to allege that he sought and was denied immediate medical attention upon his arrival in Springfield belies his contention that the marshals ignored urgent medical needs. In short, the district court could properly conclude that Loe could prove no facts that would enable him to prevail on this claim and summary dismissal under Rule 12(b)(6) was proper.
 
 
 24
 To summarize, we reverse the judgment of dismissal with respect to Loe's alleged cause of action with regard to the initial treatment of his broken arm and remand this part of the case for further proceedings. We affirm the dismissal of Loe's complaint with regard to all other matters alleged.
 
 
 25
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 26
 I must, respectfully, dissent for two reasons:
 
 
 27
 First, the majority today holds that when a prisoner has a broken arm he can maintain a § 1983 action against any responsible state or federal official who has failed to assure that he is examined by a physician within at least eleven hours of his injury and has his arm x-rayed within twenty-two hours of his injury. This holding rests upon facts admitted in the plaintiff's various complaints that he was injured by a known cause, was suffering from a known trauma to a non-vital body part, was immediately taken to an infirmary provided at the jail facility, was seen there by a nurse who gave him a pain pill, was several hours later seen by that same nurse, was able to complain to a second nurse, was examined eleven hours after the injury by a physician who did not prescribe a more potent pain reliever than that provided to plaintiff earlier, was taken to a hospital at eight-thirty the next morning by federal marshals for x-rays, had his arm put in a full shoulder-to-wrist cast at the hospital by the same physician who saw him at the jail at nine o'clock the night before, and had his arm placed in a patient-removable half-cast two weeks thereafter, which the prisoner chose to remove himself several weeks later an incredible set of facts upon which to find the district court was clearly erroneous in finding no claim to have been stated for deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The plaintiff admits that upon breaking his arm his immediate medical need was pain and that it was treated by medical personnel immediately, and he further admits in his complaint that his injury was not serious and was attended to by a physician working in the evening and early morning hours with the reasonable and, apparently conscientious, cooperation of all local and federal officials involved. I can find no possible basis for a finding of alleged Deliberate indifference to a Serious medical need and, therefore, I must dissent from the majority's finding that the district court was clearly erroneous in dismissing the plaintiff's complaint.
 
 
 28
 Second, the majority would apparently create a general federal remedy in this circuit under the Fifth Amendment for any alleged violation of a due process right on the bare allegation that federal marshals may or may not have been called to take plaintiff to the hospital before plaintiff was seen by a physician. The majority disregards the well-reasoned opinion of the Fifth Circuit in Davis v. Passman, 571 F.2d 793 (5th Cir. 1978), wherein the court, sitting En banc, refused to indiscriminately recognize such a cause of action against federal officials without consideration of the nature of the violation, the federal right to be protected and the need for a special federal remedy for violation of such right. The basis of that opinion was that extension of the federal remedy in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), would so deluge federal courts with new actions so as to paralyze them. The majority's rush to establish such a cause of action against federal officials on the speculative facts of this case clearly ignores the reasoning in Davis v. Passman and serves to encourage the litigious prisoner who can find federal officials to sue for alleged violations of any conceivable due process rights of the Fifth Amendment.[1] I think it is incumbent upon the federal judiciary to prevent claims, particularly unmeritorious ones, from over-burdening our judicial resources to the exclusion of speedy decision of all claims, most particularly meritorious ones.
 
 
 29
 Therefore, because I think the majority analysis of the facts alleged in plaintiff's complaints is wrong and the implied indiscriminate creation of a general federal remedy for any violation of a Fifth Amendment right is unnecessary in this case and improvident in any case, I must strongly dissent.
 
 
 
 [1]
 Loe's appeal from the order dismissing his original complaint is No. 77-2039. After dismissal of the initial complaint, Loe filed two amended complaints that essentially repeated the allegations of the first. Each was dismissed on grounds of Res judicata, and Loe appealed each (Nos. 77-1234 and 77-2135). In oral argument, his appointed counsel conceded that the amended complaints alleged no new matter, nor did they raise any new issues, and that a decision with respect to the initial complaint (No. 77-2039) would be dispositive of all of the litigation. Accordingly, we confine our inquiry to the original complaint
 
 
 [2]
 A notable exception is the Fifth Circuit's recent decision in Davis v. Passman, 571 F.2d 793 (5 Cir. 1978). In that case, a woman who had been a member of a congressman's staff alleged that she had been dismissed by him solely because of her sex. Claiming that his actions violated the equal protection component of the fifth amendment's due process clause, she brought suit directly on that amendment. The court ruled that Bivens did not authorize an action based directly on the fifth amendment
 It can plausibly be argued that the relationship between a congressman and his staff is a matter peculiarly within the concerns of the legislative branch and that special factors therefore counsel against implication of a Bivens -type remedy. Indicative of this special relationship is 2 U.S.C. § 92, which makes members of a congressman's personal staff removable at any time with or without cause. Furthermore, the amendments to Title VII that extended its coverage to federal employees did not protect persons in noncompetitive federal positions such as congressional staff members. All of these factors might justify a refusal to create a Bivens remedy. Nevertheless, although the Passman court acknowledged the force of this analysis, it placed its primary reliance on a different argument. That argument was that extension of Bivens to fifth amendment due process claims would so deluge the federal courts with new actions as to paralyze them. 571 F.2d at 799-801. The court refused to institute such a drastic measure without congressional guidance.
 Justice Harlan's concurring opinion in Bivens speaks cogently to this point.
 Judicial resources, I am well aware, are increasingly scarce these days. Nonetheless, when we automatically close the courthouse door solely on this basis, we implicitly express a value judgment on the comparative importance of classes of legally protected interests. And current limitations upon the effective functioning of the courts arising from budgetary inadequacies should not be permitted to stand in the way of the recognition of otherwise sound constitutional principles.
 403 U.S. at 411, 91 S.Ct. at 2012. (Harlan, J., concurring). In any event, we think that Passman, if not distinguishable, is inconsistent with our decision in States Marine Lines, Inc. v. Shultz, 498 F.2d 1146, 1156-57 (4 Cir. 1974), Infra in text, and we decline to follow it.
 
 
 [3]
 We conclude otherwise with regard to Loe's allegations of the subsequent treatment of his broken arm. His assertion that he suffered pain two and one-half weeks after the injury and that the fracture had not healed do not establish deliberate indifference or lack of due process. Similarly, his allegation that he has not achieved a satisfactory recovery suggests nothing more than possible medical malpractice. It does not assert a constitutional tort
 Lest the district court believe that we acquiesce in our dissenting brother's interpretation of what we decide and be in doubt as to the scope of the proceedings on remand, we disavow that what we hold is that "when a prisoner has a broken arm he can maintain a § 1983 action against any responsible state or federal official who has failed to assure that he is examined by a physician within at least 11 hours of his injury and has his arm x-rayed within 22 hours of his injury." A more correct statement of our holding is that the complaint of a prisoner under § 1983 against responsible state and federal officials is not subject to summary dismissal when he alleges that, With deliberate indifference, the defendants failed to have his painful and obviously broken arm examined until 11 hours after his injury and failed to have it x-rayed until 22 hours after his injury. As a consequence, plaintiff will have the opportunity to present his evidence of deliberate indifference and defendants will be required to plead and present evidence explaining the delays in providing medical attention.
 
 
 [1]
 It should be noted that government counsel for the federal defendants informed the court in oral argument that the three cases here appealed constituted the tenth, eleventh and twelfth actions filed in the district court below and that the defendant has taken seven appeals to this court