**William Christopher BROWN**

v.

**COMMISSIONER OF CECIL COUNTY JAIL et al.**

**Civ. No. Y–80–814.**

United States District Court, D. Maryland.

Nov. 19, 1980.

William C. Brown, pro se.

Robert K. Nead, Baltimore, Md., H. Norman Wilson, Jr., Elkton, Md., Stephen B. Caplis, and Richard W. Case, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The plaintiff, William Christopher Brown, has filed suit under 42 U.S.C. § 1983, for alleged deprivation of his constitutional rights occurring during his incarceration in the Cecil County Jail from June 19, 1979, to August 20, 1979. This is the fourth action brought by Mr. Brown in this Court. Two petitions for writs of habeas corpus were filed on March 3, 1980 and denied by Order of September 11, 1980. An earlier case, *Brown v. Mahoney*, Y–78–1166, *aff'd*, 628 F.2d 1347 (4th Cir., 1980) was similar to the present case but arose out of a different period of incarceration in the Cecil County Jail. That action was dismissed with prejudice when the plaintiff failed to appear in Court for the hearing.

A hearing was held in the present action on Monday, November 3, 1980, and the testimony of numerous witnesses for both sides was presented. For the reasons to be set forth below, it is determined that the plaintiff is entitled to no relief and that judgment should be entered in favor of the defendants.

The plaintiff brought this action against five named individuals who are, or have been, employees or officials of the Cecil County Jail. The five individuals are: Mary Maloney, former County Commissioner for Cecil County; John F. Dewitt, Sheriff, Cecil County; Frank A. Morgan, Head Jailer; Juana M. Cloud, Assistant Head Jail Administrator; and, Larry P. Dales, former Chief Deputy Jailer. At the hearing it was determined that Mary Maloney, one of the named defendants, left office as a County Commissioner for Cecil County on December 5, 1978, and that she has had no connection with or any responsibility for the operation of the Cecil County Jail at any time since leaving office. Because the allegations of this action concern a period of incarceration occurring during the summer of 1979, it was determined that Maloney could not be responsible for any violations of the plaintiff's rights which may have occurred and, therefore, her motion to dismiss was granted at the conclusion of the plaintiff's case.

The plaintiff has filed many pleadings with the Court, including affidavits, exhibits, letters and "demonstrations." Holding these pleadings and the evidence presented in support thereof to the less stringent standards required of *pro se* complainants, *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McNair v. McCune*, 527 F.2d 874 (4th Cir. 1975); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), the plaintiff can be interpreted to have made the following allegations: (1) that the statute under which he was convicted is unconstitutional; (2) that he was imprisoned on account of defective indictments; (3) that he was unlawfully confined in the wrong institution; (4) that he was denied adequate medical treatment; (5) that he was denied the right to practice his religion; and (6) that he was subjected to unconstitutional living conditions in the jail. The plaintiff seeks damages in the amount of $1,500,000.00 for the physical and mental harm allegedly caused to him and his family.

The first three allegations can be easily disposed of because the defendants were acting under the direction of a judicial order in detaining the plaintiff and jail officials cannot be held responsible for such actions as indictments, convictions or sentencings. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *Lang v. Morrissey*, 591 F.2d 1340 (4th Cir., 1979)

(unpublished). The plaintiff admitted as much in his memorandum of July 7, 1980 and the proper focus of this action should be the allegations of unconstitutional treatment related to the plaintiff's incarceration in the Cecil County Jail.

*Denial of Adequate Medical Treatment.*

■ The plaintiff's allegations regarding the lack of adequate medical treatment deal with the failure of the jail officials to provide him with medical care for injuries he had sustained prior to his incarceration as well as their failure to arrange quickly enough treatment for his gonorrhea. The facts as developed at the hearing establish that the treatment received by the plaintiff did not constitute the "unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976):

> "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle, supra*, at 105–06, 97 S.Ct. at 292.

The plaintiff was placed in the Cecil County Jail on June 19, 1979, when he was arrested on a bench warrant for failure to appear in Cecil County Circuit Court that morning on charges of petty larceny and speeding. The evidence establishes that the plaintiff had been treated in the Emergency Department at Harford Memorial Hospital, Havre de Grace, that morning for injuries to his chest which had occurred the previous day while playing basketball. (*See* Plaintiff's Exhibit No. 1). He was discharged from the Emergency Department at 10:30 a. m. on June 19, 1979, with the "diagnosis of contusion of left chest wall" and "advised to see his family physician for follow–up medical care". Dr. Rao concluded that, "He left the hospital in good condition." (*See* letter of Dr. Rao, October 24, 1980, Plaintiff's Exhibit No. 1). The plaintiff had also been seen in the Emergency Room at Harford Memorial Hospital on June 8, 1979, following a burn from gasoline on his arm. Dr. Jabaji treated him on June 8 and advised him to see Dr. Charles Foley on June 11, 1980, which he did. His dressing was changed and he was told to return on June 14, 1979, which he never did. (*See* letter of Dr. Foley, October 14, 1980, Plaintiff's Exhibit No. 1). The plaintiff claims that he advised the jail officials upon his admission to jail that he had received injuries which would require further medical treatment, but that he did not receive adequate treatment. The other part of this claim regards the treatment for the gonorrhea which the plaintiff claims he contracted within the jail.

■ The evidence presented at trial does not support the allegations of the plaintiff. The medical treatment of prisoners at the jail was provided under a standard procedure whereby a prisoner desiring to see a doctor filled out a request slip which was automatically given to the doctor on his weekly rounds. The prison officials exercised no discretion over who was permitted to see the doctor and a search of the files revealed no request by this plaintiff to see a doctor until Saturday, August 4, 1979, when the plaintiff complained of the gonorrhea. Up to that point, the defendants cannot be held liable for an intentional denial of necessary medical care because there is no evidence that they had any knowledge of the plaintiff's alleged requests for medical care. As for the delay in the plaintiff's treatment for his condition of venereal disease, the evidence cannot support a finding either that the treatment was inadequate or that the delay was intentional or unjustified. The intentional denial or delay of necessary medical care would state a claim for relief, but delay in providing treatment does not violate the Eighth Amendment where the seriousness of the injury is not apparent. *Henry v. Simmon*, 565 F.2d 156 (4th Cir., 1977) (unpublished). It is uncontroverted that the plaintiff was treated for gonorrhea in the Cecil County Health Department on August 9, 1979. (*See* letter of Dr. Byer, Plaintiff's Exhibit No. 1). The

plaintiff also received followup treatment from Dr. Shoe in Elkton, Maryland, on August 17, 1979. The plaintiff admitted at the hearing that he first informed the jail officials of his condition on a Saturday, which he believed to be August 1, 1979. However, since the first was actually a Wednesday, the calendar supports the assertion of defendant Morgan that the first complaint was actually not until August 4. Morgan then called the Health Department on Monday morning, August 6, 1979 to arrange an appointment for treatment of the plaintiff's condition. The delay of less than one week does not appear unreasonable given the fact that the plaintiff can show no evidence of any permanent injury and the schedule was set by the medical professionals at the Cecil County Health Department. Furthermore, the plaintiff's situation was not as obvious or verifiable as the clearly swollen broken arm of the plaintiff in *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978), *cert. denied sub nom. Moffit v. Loe*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).

*Denial of Right to Practice Religion.*

The plaintiff claims that upon his arrival at the jail, he made it clear that he was a Muslim and requested to receive visits from the Iman of the World Community of Al-Islam in the west, Masjid Muhammad. He also allegedly requested that he be allowed to practice his religion and receive and possess Muslim literature. He alleges that not only was he denied these requests but he was forced to accept the religion of Christianity three times a week and was punished for possessing Muslim literature.

The right to practice one's religion is entitled to a "preferred position in the catalogue of constitutional rights" and a prisoner's desire to practice religion may only be restricted upon a convincing showing that paramount state interests so require. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854 (4th Cir. 1975); *Howard v. Smyth*, 365 F.2d 428 (4th Cir.), *cert. denied*, 385 U.S. 988, 87 S.Ct. 599, 17 L.Ed.2d 449 (1966).

However, the evidence presented at the hearing does not show any denial or infringement of the plaintiff's right to practice his religion. The jail chaplain, Rev. Charles Edward Barton, Jr., testified that all requests for ministers of a certain faith are given to him and he makes arrangements for such a visit. The jail chaplain had the name of a Muslim minister who was willing to visit prisoners but the defendants testified that neither the plaintiff nor anyone else had requested a Muslim minister. Furthermore, there was no evidence that any minister had ever sought to obtain entrance to the jail to visit with plaintiff. There was a group of religious people that sometimes visited the jail, but there was no evidence that anyone, including the plaintiff, was ever forced to meet with these people or participate in their religious services. Finally, there was no evidence that any of the prison officials have ever withheld literature from the plaintiff, a practice that this Court recognizes must be strictly limited under the dictates of *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

*Unconstitutional Living Conditions.*

The plaintiff has also claimed that the living conditions at the Cecil County Jail were constitutionally inadequate. His main complaint along these lines appears to be his belief that the unsanitary conditions of his cell caused him to contract gonorrhea from using the toilet in his cell. He also complains about the crowded conditions in the jail. The standard to be applied in determining if the conditions at the jail violated the Eighth Amendment prohibitions against cruel and unusual punishment are "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). The conditions may be harsh and unpleasant, but they must meet basic sanitation and nutrition requirements. *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 861 (4th Cir. 1975). If the plaintiff can show that the conditions had an adverse

effect upon his health, such conditions would constitute cruel and unusual punishment. *Sweet, supra.*

The evidence presented at the hearing does not establish that the conditions at the Cecil County Jail failed to meet the minimum standards proscribed by the Constitution. The plaintiff presented several witnesses who testified to their dissatisfaction with the general conditions of the jail and was even able to elicit an admission from Juana M. Cloud, one of the defendants, that no one is really satisfied with the conditions at the jail. However, dissatisfaction alone is not sufficient to state a constitutional claim. The prisoners in the jail are provided with basic personal amenities and the plaintiff in this case had, upon his admittance to the jail, signed a receipt indicating he had received a mattress, blanket, toothbrush, toothpaste, sheet, towel and washcloth. (*See* Defendant's Exhibit No. 1). The cells were probably not perfectly spotless, but the Sheriff testified that cleaning supplies were furnished to the inmates and that additional necessary supplies were available upon request. As for the crowded conditions of the jail, this Court is quite familiar with the necessity for additional jail facilities in Cecil County. Plans have been undertaken to construct a new facility and construction is estimated to be completed in 1983. (*See* Defendant's Exhibit No. 4). At the time this plaintiff was incarcerated the average daily population for the prison ran at approximately fifty-eight (58) inmates per day. (*See* Defendant's Exhibit No. 2). At the present, according to the testimony of the Sheriff, that average jail population is running just under one hundred (100). Furthermore, defendant Morgan, the Jail Administrator, testified that the plaintiff was assigned to the upper left tier, an area of the jail with three individuals cells, where the crowding problem was less severe than in the rest of the jail. Given these circumstances, the plaintiff has not shown that the crowding to which he was subjected constituted cruel and unusual punishment. *Johnson v. Levine*, 588 F.2d 1378 (4th Cir. 1978).

The final aspect of this claim is the plaintiff's argument that he contracted gonorrhea from using the commode in his cell. Such a claim contradicts the present state of medical knowledge. Gonorrhea is a venereal disease which has been estimated to be the most frequent bacterial infection in man. Gordy and Gray, *Attorneys' Textbook of Medicine* (3rd Edition 1980) Vol. 2, ¶ 39.50. The causative agent, Neisseria gonorrhoeae or gonococcus, is a gram-negative diplococcus which is transmitted almost exclusively by sexual contact. The exception is gonorrheal ophthalmia neonatorum, an eye infection transmitted to the newborn infant from an infected mother. Man is the only reservoir for the gonococcus which does not survive outside the body. It is transmitted directly from active cases and from asymptomatic carriers. *Attorneys' Textbook of Medicine, supra.* In light of these scientific facts, it is virtually impossible that the plaintiff actually contracted gonorrhea from anything other than sexual contact, and certainly not from an inanimate toilet seat.

In light of the above factual findings, all made pursuant to Rule 52 of the Federal Rules of Civil Procedure, it is the conclusion of this Court that the plaintiff has failed to show any denial or abridgement of his constitutional rights arising out of his incarceration in the Cecil County Jail during the summer of 1979.

Accordingly, it is this 19th day of November, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion to dismiss filed on behalf of defendant Mary Maloney be, and the same is, hereby GRANTED;

2. That JUDGMENT in this action be, and the same is, hereby ENTERED IN FAVOR of the remaining DEFENDANTS; and

3. That a copy of this Memorandum and Order be sent to all parties.