Betty Joan Land SOSEBEE, Administratrix of the Estate of Gary McArthur Land, deceased, Appellant,

v.

Rosemary MURPHY, Laura Brown, Lloyd Patterson, Henry McDaniel, David Butterfield, Jim Coffey, Joe Hilton, Leroy Brown, Erskine Clower, Annie Ruth Addy, Nathaniel Thompson, Lavister Brown, Lawrence Cantey, Kenneth Washington, Kenneth Jones, Ronald Miller, William Lovett, Ismael Rodriguez, Carroll W. Bledsoe, Sr., Arneal Williams, Appellees,

and

Green B. Neal, M.D., Pat Satterfield, and Ernest E. Areheart, William Lynch, Roger Sturrup, and Robert Mays, Defendants.

Betty Joan Land SOSEBEE, Administratrix of the Estate of Gary McArthur Land, deceased, Appellant,

v.

Rosemary MURPHY, Laura Brown, Lloyd Patterson, Henry McDaniel, David Butterfield, Jim Coffey, Joe Hilton, Leroy Brown, Erskine Clower, Annie Ruth Addy, Nathaniel Thompson, Lavister Brown, Lawrence Cantey, Kenneth Washington, Kenneth Jones, Ronald Miller, William Lovett, Ismael Rodriguez, Carroll W. Bledsoe, Sr., Arneal Williams, Appellees,

and

Green B. Neal, M.D., Pat Satterfield, and Ernest E. Areheart, William Lynch, Roger Sturrup, and Robert Mays, Defendants.

Nos. 85–1513(L), 85–1514.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1985.

Decided Aug. 5, 1986.

M. Wallace Smith (Younts, Smith & Alford, Greenville, S.C., on brief) for appellant.

Charles E. Carpenter, Jr. (George C. Beighley, Richardson, Plowden, Grier & Howser, William H. Davidson, II, Nauful & Ellis, Columbia, S.C., on brief) for appellees.

Before PHILLIPS and ERVIN, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Circuit Judge:

Betty Joan Land Sosebee, Administratrix of the Estate of Gary McArthur Land (decedent), brought an action under 42 U.S.C. §§ 1982, 1983 and for medical malpractice as a result of the death of decedent while he was incarcerated at the Maximum Security Center (M.S.C.) in Columbia, South Carolina. The district court granted summary judgment on behalf of all defendants on the grounds that there was no genuine issue of fact as to the violation of sections 1982 or 1983 and that there was, therefore, no basis to exert pendent jurisdiction over a state court malpractice claim. We affirm in part, reverse in part, and remand. The evidence presented raises material issues of fact as to the deliberate indifference by the guards on duty during the last hours of Land's life.

## I.

On Wednesday, May 6, 1981, decedent ate an evening meal consisting of steak. Thereafter he complained of pain in the neck and chest area. The next morning, Thursday, May 7, at 8:20 a.m., decedent was examined by Dr. Green B. Neal, a prison doctor. Dr. Neal diagnosed probable gastritis, and prescribed treatment with Maalox, Donnatal and a G.I. Cocktail.

Decedent was then returned to his cell where he was to receive the medications prescribed by Dr. Neal. The M.S.C. Sick Call Notes contain the following additional medical evidence. Two days later on Saturday, May 9, at approximately 4:00 p.m., a medical technician, defendant Joe Hilton, received a call from the cell block informing him that decedent continued to complain of chest pains and that he had received only part of his medications for that day. Hilton then called Dr. Neal and reported decedent's complaints. Dr. Neal continued to rely upon his original diagnosis and directed that additional medications be provided. Hilton then sent an additional G.I. Cocktail.

Later that same day, at 7:15 p.m., additional Donnatal tablets were dispatched by defendant Erskine Clower, a licensed nurse, in response to Land's continuing complaints of chest pain. The following day, Sunday, May 10, at 8:30 a.m., decedent was transported from his cell to the infirmary with the same complaints of chest pain. He was examined by defendant Lloyd Patterson, a medical technician, given Visteril and a G.I. Cocktail, and scheduled to be checked by another medical technician, defendant Jim Coffey, on Tuesday, May 12. The next and final entry on the Sick Call Notes was a notation that Land was found dead in his cell on Monday, May 11, at 7:20 a.m. A pathological report prepared by Dr. Todd A. Kolb indicates that the cause of death was a steak bone piercing the esophagus with infection in the neck structures.

Other evidence in the record includes five affidavits from prisoners who were in cells near to Land during the time of Land's sickness. These affidavits state that when Land became increasingly ill and wanted medical attention on Sunday, the other in-

mates communicated that among themselves, through the ventilation system, and created a commotion to attract the attention of the correctional officers. The guards responded to the effect that decedent had been seen by a doctor and that nothing more would be done for him until Monday morning, and threatened the inmates with solitary confinement if the commotion did not cease.

Other evidence also showed that Land was deathly ill on Sunday. Dr. Neal, in a deposition, stated that for at least ten hours preceding death Land would have been very pale, sweating profusely, feverish, suffering from severe chest pain, and unable to swallow.

Plaintiff argues on appeal that the medical personnel[1] and correctional officers acted with deliberate indifference toward Land's medical condition, thereby giving rise to a section 1983 claim. Specifically, plaintiff contends that had a doctor examined decedent subsequent to the morning of Thursday, May 7, 1981, at which time the examination by Dr. Neal took place, certain observable symptoms would have necessarily alerted a doctor to decedent's life threatening condition. Plaintiff contends further that the defendant correctional officers prevented decedent from receiving timely medical attention.

The United States Supreme Court has concluded that deliberate indifference to a prisoner's serious illness or injury states a cause of action under section 1983. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court, however, carefully distinguished between a claim for "deliberate indifference" and a claim for medical malpractice. In making this distinction the Court stated: "[t]hus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* 429 U.S. at 106, 97 S.Ct. at 292 (citing, *inter alia, Russell v. Sheffer,* 528 F.2d 318 (4th Cir.1975)).

■ A review of the record[2] demonstrates that decedent received substantial medical treatment and that the basis of the claim against the medical personnel defendants is a contention of negligence under tort law principles rather than a contention of deliberate indifference under constitutional law principles. Decedent's first complaint was made the evening of Wednesday, May 6, 1981. The next morning he was given a detailed physical examination, treatment and a prescription for medication. The prescribed medication was given to the decedent. Two days later, on Saturday at 4:00 p.m., he next complained of chest pains. The prison health care staff promptly contacted Dr. Neal, who prescribed additional medication which was administered. Decedent was rechecked later that same evening by the medical staff and given additional medication based on Dr. Neal's previous diagnosis and prescription. On Sunday morning, at 8:30 a.m., he was again brought from his cell and seen

---

1. Dr. Neal, who examined Land on May 7, 1981, was originally a defendant in this action, but was subsequently dismissed.

2. Because this is an appeal from summary judgment, we must review the record to determine if any genuine issue of material fact exists. The burden is on the moving party, defendants herein, to show that there is no question of fact and that the defendants are entitled to judgment as a matter of law. In determining if this showing has been made

>   [t]he facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to plaintiff, as the party opposing the motion.... The

nonmoving party is in a favorable posture, being entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered."

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (quoting *Charbonnages De France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

by a medical technician. He was scheduled to be re-examined on Tuesday, May 12.

■ These same facts also show that the correctional officers on duty from May 6, 1981, to the morning of May 10 did not act with deliberate indifference toward Land's medical needs. There is no evidence indicating that within that period Land's requests for medical assistance were ignored. Indeed, the M.S.C. Sick Call Notes indisputably establish that he received prompt attention. Accordingly, the district court was correct in granting summary judgment on behalf of those correctional officers and medical personnel on duty between May 6 and 8:30 a.m. on May 10.

■ After the 8:30 a.m., May 10, visit to the infirmary, the record establishes that Land's condition substantially worsened. The undisputed evidence shows that Land was seriously ill for several hours prior to his death. Dr. Neal's uncontradicted statements in his deposition support this conclusion. Land's symptoms would have made it obvious that he required immediate medical attention during this time period.[3]

The apparent seriousness of Land's condition during his last hours of life raises issues of material fact. If the prison guards on duty at that time were aware of Land's physical status but refrained from obtaining medical assistance, an inference of deliberate indifference would arise. Indeed, this circuit held in *Loe v. Armistead,* 582 F.2d 1291 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980), that an eleven hour delay by prison officials in seeking a doctor's care for a prisoner's obvious broken arm was an unusual length of delay. Such delay provided a reasonable basis for the inference that there was a deliberate indifference to the prisoner's medical needs. *Id.* at 1296. If an eleven hour delay in caring for a broken arm is abnormal, a ten hour (or more) delay in attending to a deadly illness is likewise abnormal.

The record is replete with evidence from which a jury could rationally find that the guards on duty were aware of Land's serious condition and intentionally abstained from seeking medical help. The five affidavits from prisoners who were in cells near to Land during the time in question corroborated each other, stating that the guards working on Sunday[4] knew about Land's grave state, but decided to wait until Monday to take him to the infirmary. Indeed, the affidavits recite specific incidents showing this deliberate indifference to Land's situation: (1) the guards had seen or talked with Land and then were heard discussing his severe symptoms; (2) the guards expressed their awareness of Land's condition to the prisoners; (3) the guards laughed and joked about Land's physical state; (4) the guards told certain prisoners that nothing would be done for Land before Monday morning; and (5) the guards threatened all prisoners with solitary confinement if requests for medical assistance for Land continued.

Defendants presented no evidence rebutting the prisoners' affidavits. Indeed, defendants have not even denied the truth of these sworn statements.

Given such evidence, summary judgment in favor of these defendant guards cannot be supported. The district court apparently discredited the prisoners' affidavits. This is erroneous. Plaintiff is entitled to have all her evidence considered. Moreover, the credibility of her evidence must be assumed. *See Ross,* 759 F.2d at 364 (quoting *Charbonnages,* 597 F.2d at 414). Only the trier of fact can assess the truthfulness of an affidavit. *Cf. Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979) (summary judgment is inappropriate when affidavits require credibility determinations).

---

3. The time period in question is after the Sunday, 8:30 a.m. infirmary visit and before the Monday, 7:20 a.m. discovery of Land's body. The record does not indicate that Land had severe symptoms on Sunday at 8:30 a.m. when he received medical assistance.

4. Each affidavit specifically named one or more of the following guards: Carroll Bledsoe, Nathaniel Thompson, Kenneth Jones, Ronald Miller and Arneal Williams.

In sum, the evidence shows that issues of material fact exist. The record contains evidence that the defendant guards were aware that Land's condition had worsened and was life-threatening and that they intentionally ignored the situation and refused to seek medical assistance.[5] Such facts provide a reasonable basis for finding a deliberate indifference to Land's medical needs. *See Loe*, 582 F.2d at 1291. Accordingly, we reverse the district court's summary judgment order as it relates to the guards on duty during the period after 8:30 a.m. on Sunday until the time of his death on Monday morning, and remand that portion of the case for trial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HILTON, District Judge, concurring in part, dissenting in part:

I agree that the evidence in this case does not rise to a Constitutional deprivation in that no deliberate indifference to Land's medical needs was shown as to the correctional officers and medical personnel on duty between May 6 and 8:30 a.m. on May 10, 1981. I would also find that the correctional officers on duty thereafter, up to the time of death similarly committed no deliberate indifference and would respectfully dissent with that portion of the majority decision.

Dr. Neal testified, in deposition, that during the last ten hours of his life Land "... should have been a very sick person; fever, pale, sweating profusely, and complaining of a lot of pain in the chest. He should not have been able to swallow for the pain ..." None of the affidavits of inmates incarcerated at M.S.C. mention the observation of these severe symptoms. The affidavit of inmate Franklin Morgan indicates that a correctional officer checked Land on Sunday May 10, and reported that he seemed to have a fever and his throat was swollen. There is no indication in the affidavit if this check was made prior to his 8:30 examination by the nurse or later in the day. However, these symptoms were consistent with the condition (fever, swollen throat) which had been present for several days and for which he had received continued attention and treatment. There was no evidence presented that any severe symptoms were present or brought to anyone's attention. Deliberate indifference indicates a punitive motive. There is no showing in the record of action by the guards amounting to deliberate indifference.

In *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978), this Court held that federal marshals, who were aware of a prisoner's broken arm and delayed some eleven hours before affording him appropriate medical attention, stated a cause of action for deliberate indifference sufficient to withstand a motion to dismiss under Rule 12(b)(6). In the present case, there is no evidence that the guards were made aware of the serious symptoms described by Dr. Neal, nor is there any evidence that Land in fact had the symptoms. The evidence indicates that Land continued to exhibit the same symptoms Sunday that he had exhibited the previous three to four days. These same symptoms were brought to the attention of the medical staff on numerous occasions and treatment was rendered based on Dr. Neal's original diagnosis.

To apply the rationale of *Loe* to this case requires a thrust beyond the facts before the Court, and presumes the existence of symptoms which Dr. Neal said could have existed. The punitive motive displayed by the federal marshals in *Loe* was predicated upon their knowledge of the injury. There is no evidence in this case that the guards had knowledge of any symptoms other than those previously noted and for which treatment was rendered. A punitive motive cannot be ascribed to the guards in the present case upon facts which are not in evidence and must be presumed.

---

**5.** Arguably, since the day in question was Sunday, the guards were more reluctant to call a doctor. This fact, however, does not rebut an inference of deliberate indifference. Indeed, as this court noted in *Loe*, faster treatment at a hospital emergency room is available. *Loe*, 582 F.2d at 1296. Thus, we cannot excuse the delay because it happened on a Sunday.

The evidence in this case does not rise to a Constitutional deprivation as there is no evidence of deliberate indifference to Land's medical needs. On the contrary he was promptly examined by a physician, given medication and monitored regularly by the prison personnel.

Accordingly, I believe that the district court's summary judgment order dismissing this case should be affirmed.