Theodore James LEWIS, Plaintiff,

v.

Ron ANGELONE, et al., Defendants.

Civil Action No. 95–0672–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

May 1, 1996.

2. In light of our conclusion, we find it unnecessary to address the other arguments SEPTA makes in support of its motion.

70

Theodore James Lewis, Craigsville, VA, pro se.

Jill Theresa Bowers, Office of the Attorney General, Richmond, VA, for Ron Angelone, defendant, L.M. Saunders, defendant, J. Lee, defendant, Sgt. Sprouse.

G. Rodney Young, II, Wharton, Aldhizer & Weaver, P.L.C., Harrisonburg, VA, for S. Murphy, defendant, R.N. Snyder, defendant, Nurse Steward, defendant, Fitzgerald, defendant, Nurse Nelson, defendant.

## MEMORANDUM OPINION

TURK, District Judge.

THEODORE JAMES LEWIS, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendants, officials of Virginia Department of Corrections (VDOC), denied him timely and adequate medical care for an ear infection in March and April 1995. Plaintiff seeks monetary damages and declaratory relief. Ron Angelone, Director of the VDOC; Lonnie Saunders, Warden; J. Lee, Assistant Warden; and Sgt. Sprouse (the nonmedical defendants) have filed an answer and a motion for summary judgment. The other defendants are medical officers: Sandra Murphy, Julian Snyder, Elizabeth Stewart, Shawn Fitzgerald, and Mark Nelson; these defendants, by separate counsel, have filed a

motion for summary judgment, incorporating their earlier motion to dismiss and attached affidavits. The court notified the plaintiff of the defendants' motions as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975) and warned plaintiff that judgment might be granted for the defendants if plaintiff did not respond to the motion by filing affidavits or other documents contradicting or otherwise explaining his claims. Plaintiff has responded by filing an affidavit and some additional documents. The time allotted by the court for any further response has expired, making this action ripe for the court's consideration.[1] After review of the record, it is the opinion of the court that all defendants are entitled to summary judgment as a matter of law.

## I. Statement of Facts

Plaintiff Lewis alleges that in late February and early March 1995, he developed an ear infection.[2] He complained to medical personnel on March 28, 1995, advising Nurses Stewart and Fitzgerald that his ear hurt, that it was infected and was draining, and that he was experiencing stomach pain. He asked to see a doctor.[3] They told him he would be examined by someone in the medical department. His appointment for March 29 was later rescheduled by the medical department. On April 2, excruciating pain shot through Lewis' right ear. He told an officer that he had a medical emergency and was escorted to medical about twenty minutes later. Nurse Snyder examined him that day, told him that his ear was infected, told him an appointment would be made for him with the doctor the next day, and provided him with Maalox for his stomach pain. Lewis did not get to see the doctor on April 3 as promised. On April 4, 5, and 7, Lewis told various defendants that his ear still hurt and that he needed to see the doctor; he was told that he would be or was already scheduled, but was not taken to an appointment.[4]

On April 10, 1995, Lewis was examined by Snyder.[5] He told Lewis that he was scheduled to see the doctor the next day. On April 11, Sgt. Sprouse escorted Lewis to the medical department for the doctor's appointment. After twenty minutes of waiting, Sprouse declared that he was tired of waiting and that Lewis could come back to see the doctor the next day. Although Lewis protested, Sprouse gave him a direct order to leave the medical unit.[6]

The doctor examined Lewis' ear on April 12. It was still aching and infected. The doctor prescribed an antibiotic for Lewis to take daily for seven days. At the end of the seven day period, the ear still hurt. Lewis told a nurse during pill call that he needed to be seen by the doctor again because the infection had not resolved and his ear was

1. Plaintiff has filed a second motion for discovery to which defendants responded with a motion for protective order. However, plaintiff has not requested an extension of time in which to procure the discovery materials and expand his response to defendants' motions for summary judgment. In addition, the materials requested in discovery are not relevant to the court's determination herein that plaintiff has failed to present any genuine issue of material fact remaining in dispute. Accordingly, plaintiff's pending motions must be dismissed as moot.

2. Defendants assert that during this period, Lewis was twice examined by medical personnel and prescribed medication for his ear. On March 5, he was prescribed warm compresses and two tablets of Extra–Strength Tylenol twice a day for five days. Then, on March 14, he was prescribed Debrox ear drops to be taken as directed for three days.

3. Nurse Stewart notes that the institutional physician had examined Lewis' ear on March 21 and recommended no treatment, but had advised that Lewis should be scheduled for another doctor visit if his ear pain increased.

4. Defendants state that an April 7 appointment with the doctor for Lewis had to be rescheduled.

5. Some of the dates given in plaintiff's affidavit do not match those given in his complaint.

6. Sprouse states that because Lewis was assigned to a special housing unit, he had to be escorted to medical by a security officer. On April 11, Sprouse escorted Lewis to medical for his doctor's appointment, but states that he was unable to wait indefinitely because of other appointments and obligations. Sprouse states that before returning Lewis to his cellblock, he asked medical whether Lewis' appointment could be rescheduled for the next day and it was; Lewis says this is false, but does not deny that he saw the doctor the next day.

still hurting.[7] On April 25, Fitzgerald returned to Lewis' cellblock and told him that he was scheduled to see the doctor the next week. Fitzgerald allegedly would not provide Lewis with any medication for pain. When Lewis complained to Nurse Murphy about not seeing the doctor sooner, she told him that there was nothing she could do about the wait, that since the doctor had to service over a thousand inmates, he could not always see everybody who wanted to be seen on a given day. He filed an emergency grievance seeking immediate medical treatment and was escorted to medical shortly thereafter. The doctor prescribed a different medication. The pain in Lewis' ear did not go away until the end of May.

Defendants state that Lewis was seen by medical personnel on twenty different occasions during a period beginning in early March and ending in mid-June 1995; fifteen of these medical visits related to complaints about his ear. Lewis was examined by the doctor six times during this period for various complaints including his ear. Five other appointments with the doctor either had to be rescheduled or were refused by Lewis.[8] Nurse Murphy explains that a single physician was employed to provide medical care for Augusta inmates in March and April 1995. The doctor was only at the facility three and a half hours each day, during which time he had many duties, including visits with patients, reviewing charts and medication requests and other administrative tasks. Because of the limited time available for doctor visits, medical staff had to make determinations as to the seriousness of the medical complaints of the inmates desiring visits with the doctor and prioritize appointments accordingly. This situation often made it necessary to cancel and reschedule an inmate's appointment with the doctor, based on the relative seriousness of his complaint compared with other inmates who needed to see the doctor, too.

Defendants also submit the affidavit of the institutional physician who examined and diagnosed Lewis' ear infection. He states that according to his diagnosis, Lewis had a mild ear infection. The doctor saw Lewis for followup visits on April 26, May 17, and June 15, 1995, concerning the ear complaint. The ear steadily improved and by the last visit, Lewis told the doctor that the ear was no longer painful.

Finally, Defendants Angelone, Saunders and Lee state that they have no personal involvement with decisions regarding appropriate medical care for individual inmates. They rely on the opinions of the medical professionals employed by the VDOC to treat inmates' medical needs. Plaintiff has not alleged that any of these individuals were personally informed of his ear problem or that they ever denied him treatment in any way.

## II. Opinion of the Court

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed.R.Civ.P. 56(e). If the non-moving party fails to show a genuine issue of fact, summary judgment, if ap-

---

7. Defendants state that Lewis was examined by the doctor on April 20 and prescribed a new antibiotic for ten days.

8. Lewis denies that he ever refused to see the doctor.

propriate, may be entered against the non-moving party.

To prove that his course of medical treatment amounted to a violation of the Eighth Amendment prohibition of cruel and unusual punishment, the plaintiff must show that medical personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison personnel show deliberate indifference by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to medical care. *Id.* To show that an officer was deliberately indifferent, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he drew or must have drawn that inference, and then disregarded the risk. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

The propriety of a delay in providing medical care must be measured against the severity and immediacy of the medical condition involved. *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978). Conditions or delays that cause or perpetuate pain may also show serious medical need. *Loe v. Armistead, supra.*

In considering a medical claim under the Eighth Amendment, a court must carefully consider the nature of the prisoner's allegations. If the claim concerns a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment, the Eighth Amendment is not implicated. Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir.1975). Moreover, mere malpractice does not state a federal claim, *Estelle*, 429 U.S. at 105–106, 97 S.Ct. at 291–292, nor does mere negligence in diagnosis. *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986); *see Estelle v. Gamble, supra.*

The Fourth Circuit Court of Appeals has held that a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); *Slakan v. Porter*, 737 F.2d 368 (4th Cir.1984); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir.1979). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, the court finds that plaintiff has failed to present any genuine issue of fact remaining in dispute concerning the adequacy of his medical treatment. First, Lewis has failed to refute assertions by Defendants Angelone, Saunders and Lee that they rely on the medical opinions of medical professionals in decisions regarding appropriate medical care for inmates. Accordingly, they cannot be held liable under the Eighth Amendment for any alleged denial or delay of medical care. *Miltier, supra.* As Lewis has failed to present any genuine issue of material fact regarding this claim, these defendants are entitled to summary judgment as a matter of law. *Anderson, supra.*

Second, plaintiff's own allegations demonstrate that no one was deliberately indifferent to his medical needs. Any time he spoke to a nurse or medical personnel concerning his ear pain, he was examined or scheduled to see a nurse or physician. None of the medical defendants ever ignored his complaints or refused to attempt to get him an appointment. Lewis also does not dispute defendants' evidence that in early March, before the two-week period when he was unable to see the doctor, his ear had been examined and treated. Apparently, medical personnel were trying different treatment to relieve his infection and pain. From March 28 to April 12, the defendant nurses attempted several times to schedule an appointment for Lewis; Lewis does not dispute the evidence of scheduling problems. Because of the doctor's limited time for appointments, defendants had to make medical judgments concerning the priority of his medical complaint as compared to those of other inmates. Plaintiff disagrees with those judgments, as he obviously feels that his ear was of higher

priority than defendants determined. However, disagreements with medical judgments cannot provide basis for a § 1983 claim. *Estelle* and *Russell, supra.* Even assuming that Lewis could prove the medical personnel misdiagnosed or mistreated plaintiff's condition, such a claim arises under state medical malpractice law and is not cognizable under § 1983.[9] *Estelle* and *Sosebee, supra.* As to plaintiff's Eighth Amendment claims under § 1983, the medical defendants are, therefore, entitled to summary judgment as a matter of law. *Anderson, supra.*

 Finally, the court finds that plaintiff's claim against Sgt. Sprouse must fail. Although Lewis alleges that Sprouse simply got tired of waiting with Lewis for his April 11 appointment with the doctor, Lewis offers no substantial evidence to dispute Sprouse's statement that security duties elsewhere in the prison required Sprouse to leave when he did. Lewis also does not dispute that he saw the doctor the very next day and offers no evidence that this slight delay aggravated his infection to any significant extent. Lewis also offers no evidence, other than the fact of his appointment, which would have made Lewis aware that further delay of the appointment would present any risk of harm to Lewis. Based on the undisputed facts, the court cannot find that Sprouse demonstrated deliberate indifference to Lewis' medical condition when he refused to wait longer than thirty minutes for Lewis' appointment. *Farmer, supra.* As the court finds that any remaining disputes of fact are not material to the determination that Sprouse was not deliberately indifferent to Lewis' needs, Sprouse is entitled to summary judgment as a matter of law. *Anderson, supra.*

In conclusion, the court finds that all of the defendants are entitled to summary judgment. Their motions shall, therefore, be granted. An appropriate order shall be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion and ac-

companying order to plaintiff and to counsel of record for the defendants.

---

9. These claims shall, therefore, be dismissed without prejudice, which leaves plaintiff free to

raise them in the appropriate state court, should he so desire.