**Alexander CAMERON, Plaintiff,**

v.

**S SARRAF, et al., Defendants.**

**No. CIV.A. 98–1227–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 12, 2000.

by Order and accompanying Memorandum Opinion dated April 17, 2000. The remaining defendants Sarraf and Swetter were directed to provide plaintiff with access to his medical records, and plaintiff was given additional time to respond to the remaining defendants' Motion for Summary Judgment. Rather than rebutting defendants' motion, however, plaintiff instead filed a Request to Enter Default of defendants for failure to defend. Because plaintiff is erroneous and defendants have in fact filed a Motion for Summary Judgment, plaintiff's motion will be denied. Plaintiff has had ample time to review information received in discovery and has failed to file an additional response to defendant's motion. This matter therefore is ripe for disposition. For the following reasons, defendants' Motion for Summary Judgment will be granted and judgment will be entered in favor of defendants.

Alexander Cameron, Jarrett, VA, pro se.

David Ernest Boelzner, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, for S. Sarraf, M. Inman.

## MEMORANDUM OPINION

CACHERIS, District Judge.

Plaintiff, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action against several employees of the Greensville Correctional Center ("GCC") alleging violations of his Eighth Amendment right to adequate medical care. Defendants filed a Motion to Dismiss, which was granted in part and denied in part by Order and accompanying Memorandum Opinion dated June 17, 1999.[1] In response, the remaining defendants filed a Motion for Summary Judgment, which was granted with respect to defendant Inman

### I.

In April 1996, plaintiff experienced severe back pain, accompanied by numbness down his legs, uncontrollable bowel movements, stomach pain, muscle twitching, and difficulty sitting, standing or walking for extended periods of time.[2] According to plaintiff, he saw defendant Sarraf at this time, who gave him Tylenol and ordered x-rays. Defendant Sarraf indicates that plaintiff saw Nurse Howell on May 7, 1996, and she ordered the x-rays at that time. According to defendant Sarraf and plaintiff's medical records dated May 28, 1996, Dr. Ohio saw plaintiff on this date. Dr. Ohio's notes indicate that he found no tenderness on the lower back, and he offered plaintiff pain medication which was refused. Plaintiff denies being offered medication and states he would not have refused it if it had been offered. He con-

---

1. This Order dismissed all defendants except Sarraf, Swetter and Inman, and all claims pertaining to medical care after August 1998. *See Cameron v. Sarraf,* No. 98–1227 (E.D.Va. filed June 17, 1999).

2. A more complete description of the facts of this case can be found in the previous Memorandum Opinion. *See Cameron v. Sarraf,* No. 98–1227, (E.D. Va. filed Apr. 17, 2000)(granting judgment in favor of defendant Inman).

cludes that the records must have been altered to reflect defendants' assertions.

On May 16, 1996, plaintiff filed an emergency grievance to request immediate medical care due to the intense pain. The emergency grievance was denied, and plaintiff was seen by defendant Sarraf on June 25, 1996. At this visit, plaintiff alleges he asked to see a specialist but "no action was taken." According to plaintiff's medical record and a response on a subsequent grievance, however, plaintiff was given prescription pain medication and a muscle relaxer and put on bed rest for two weeks.

In February 1997, plaintiff alleges he submitted a request to the medical department, but no action was taken. He also states that in April 1997, Dr. Sarraf saw him again, gave him the results of the first x-ray that was taken the year before, and ordered a second x-ray. According to plaintiff, the second x-ray report identified the same degenerative disc condition as the first.[3] Defendant Sarraf's declaration, however, states that "[b]etween July 3, 1996 and May 15, 1998, Cameron sought no examination for his back complaints." In support, defendants have attached copies of two pages of plaintiff's medical record, spanning the dates from May 28, 1996 to July 3, 1996, and three pages spanning from August 7, 1998 to August 28, 1998. There is no indication of what kind of treatment, if any, occurred before, after, or between those ranges of dates. Plaintiff stridently denies this statement and ar-

gues that his record consists of over 200 pages, most of which relate to his back pain. Plaintiff also denies being given any medication stronger than Tylenol at any time since 1996. Plaintiff argues that pages must have been removed or altered from the record if to reflect defendants' assertions because he saw defendant Inman regularly over that time regarding his back pain.

In March 1998, plaintiff alleges that he was seen by defendant Sarraf and a third set of x-rays were taken. He notes that the information from the x-ray report was virtually identical to the 1996 (and 1997) report. Defendant Sarraf indicates through his declaration that plaintiff saw him on May 15, 1998, and x-rays were taken then. He attaches and three pages of plaintiff's medical report spanning the dates August 7, 1998 to August 28, 1998. Also attached is a copy of an x-ray report dated August 17, 1998.[4] Based on this information, defendant Sarraf states that when he saw plaintiff on August 14, 1998, he suggested bed rest and medication, but that plaintiff refused. Defendant Sarraf then indicates that he ordered full bed rest on August 21, 1998 and August 28, 1998, and referred plaintiff to a specialist. After being seen by the specialist, plaintiff was scheduled for back surgery.[5]

Plaintiff also alleges that he wrote a long letter to defendant Swetter explaining his injury and asking for relief. In his reply to defendants' Motion for Summary

---

**3.** A copy of the 1996 x-ray report states the following with regard to the lumbar spine:
There is narrowing of the disc interspace at L4–5, consistent with disc degeneration. Other interspaces look normal. No compression fractures are seen.
L5 is transitional and there are pseudoarthroses between the lateral masses of L5 and S1.
The lumbar spine is otherwise unremarkable.
CONCLUSION: L4–5 disc degeneration and a transitional L5 are noted.

**4.** A copy of the 1998 x-ray report states the following with regard to the lumbar spine:

There is narrowing at L–4/L–5, consistent with disc degeneration. No compression fractures are seen.
The lumbar spine is otherwise unremarkable.
*CONCLUSION:* L–f/L–5 disc degeneration. Old films are not available for comparison.

**5.** Plaintiff's claims against defendants relating to this surgery, including the doctor who performed the surgery, were dismissed in this action by the previous Memorandum Opinion. *See Cameron v. Sarraf,* No. 98–1227, (E.D.Va. June 17, 1999).

Judgment, plaintiff alleges that defendant Swetter denied defendant Sarraf's request to send plaintiff to a specialist, but in his complaint he states that no one recommended a specialist until after he had filed the instant law suit. He bases his claims on the conclusory statement that defendant Swetter feels "a sadistic evil that was mingled with pure hatred" for plaintiff.

On August 17, 1998, plaintiff filed the instant action. The remaining claims are summarized as follows:

Claim (1) *Defendant Sarraf,* plaintiff's treating physician at GCC, was deliberately indifferent to plaintiff's serious medical need after reviewing plaintiff's x-rays in 1996 and 1997 and refusing to provide any treatment other than bed rest, despite the fact that the degenerative disc condition apparent from the x-ray report required surgery to correct; and

Claim (2) *Defendant Swetter,* a physician and medical director at GCC, was deliberately indifferent to plaintiff's serious medical need when he had personal knowledge of plaintiff's degenerative disc condition and defendant Sarraf's lack of treatment and refused to provide treatment to plaintiff;

Defendants argue that they provided appropriate treatment and plaintiff's complaint merely challenges the type of treatment provided. Plaintiff responds that records have not been made available to him and that these records would disprove defendants' assertions.

Order dated March 17, 2000 directed defendants to provide plaintiff access to his medical records and to security log books that identified when plaintiff was seen in the medical department. As plaintiff has not informed the Court that defendants failed to comply with this Order, it must be assumed that plaintiff had access to the materials that he claimed would substantiate his allegations. However, plaintiff did not file additional documentary evidence or other responsive materials after he had this opportunity to review the records.

## II.

In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *Porter v. United States Alumoweld Co.,* 125 F.3d 243, 245 (4th Cir.1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could ... return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a motion for summary judgment is made and supported ... [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)). In the instant case, upon review of the record, it is clear that plaintiff has provided only bare allegations of malfeasance in response to defendants' affidavits. Plaintiff has failed to establish that any relevant factual disputes remain that would preclude disposition on a motion for summary judgment.

## III.

 It is well-settled that prisoners are entitled to reasonable medical care and

can sue prison officials under the Eighth Amendment if they can show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See also Staples v. Virginia Department of Corrections*, 904 F.Supp. 487, 492 (E.D.Va.1995). Thus, plaintiff here must allege and then establish two distinct elements to state a claim upon which relief can be granted. First, he must demonstrate a sufficiently serious medical need. "A 'serious medical need' is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious even a layperson would easily recognize the necessity for a doctor's attention.'" *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir.1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991)). *See also Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) (intense pain from bullet wound is sufficiently serious); *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir.1978) (pain resulting from delayed treatment of broken arm is sufficiently serious medical need). Here, plaintiff has alleged that he suffered from a degenerative disc condition that caused intense pain. Defendants do not deny plaintiff suffered from this condition. These allegations thus state a sufficiently serious medical need.

 But the analysis does not end here, for plaintiff also must establish deliberate indifference. "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 831, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish deliberate indifference on the part of nonmedical prison officials in the context of a medical claim, plaintiff must allege that "they interfered with the medical staff's treatment or were aware that the staff was providing grossly inadequate care and tacitly authorized the provision of such care.".

*Boblett v. Angelone*, 957 F.Supp. 808, 813 (E.D.Va.1997) (citing *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir.1990)). The standard for deliberate indifference is a subjective one, requiring "[a]ctual knowledge or awareness on the part of the alleged inflicter." *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir.1995).

 Whether deliberate indifference exists depends upon the facts of each case. For example, the Fourth Circuit remanded a case for further factual findings to determine whether a corrections officer's refusal to take an injured prisoner to the medical department amounted to deliberate indifference. *Brice*, 58 F.3d at 104–105. Likewise, the Fourth Circuit concluded that an unusually long delay of several days before taking a prisoner for treatment of a severely broken arm "provide[d] a reasonable basis for the inference that there was deliberate indifference." *Loe*, 582 F.2d at 1296. In other words, "[p]rison personnel show deliberate indifference by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to medical care." *Lewis v. Angelone*, 926 F.Supp. 69, 73 (W.D.Va.1996).

 Yet, it is equally clear that mere negligence or delay is not sufficient to establish deliberate indifference. For example, a district court has held that "the failure to provide a knee brace upon a single recommendation by a physician, in the absence of any subsequent requests whatsoever by plaintiff, does not demonstrate deliberate indifference." *Boblett*, 957 F.Supp. at 813. It is also clear that in some circumstances an issue of fact is presented as to the presence or absence of deliberate indifference. Thus, the Fourth Circuit has held that a reasonable jury could find deliberate indifference when an inmate had complained repeatedly of chest pains to prison officials and a doctor had recommended diagnostic testing to rule out heart disease but the officials failed to do more than prescribe a tranquilizer. *Miltier v. Beorn*, 896 F.2d 848, 853–53 (4th

Cir.1990). And, it is further clear that an intentional failure to provide the care the treating physician believes is necessary may be conduct that " 'surpass[es] negligence and constitute[s] deliberate indifference.' " *Id.* at 853 (" 'Intentional failure to provide service acknowledged to be necessary is the deliberate indifference proscribed by the Constitution.' ") (quoting *Ancata v. Prison Health Serv. Inc.,* 769 F.2d 700, 704 (11th Cir.1985)).

### IV.

■ Plaintiff does not dispute that he was seen by Dr. Sarraf, who examined him and ordered X-rays. Plaintiff does dispute that he was offered pain medication. His bare allegation that the records must have been altered, absent any indication of motive for altering them, or any documentary evidence to the contrary, however, fails to establish an issue of fact. Thus it is clear from the record that defendant Sarraf saw plaintiff on more than one occasion, made a medical diagnosis, and recommended a course of treatment. The fact that plaintiff did not agree with the "watch and wait" treatment is not sufficient to establish deliberate indifference on the part of Dr. Sarraf. Even if his diagnosis was incorrect, at best plaintiff establishes gross negligence, which is not sufficient under the Eighth Amendment standard.

■ Plaintiff alleges that defendant Swetter, as GCC medical director, knew of plaintiff's illness and refused to authorize treatment. However, plaintiff has provided no evidence beyond this bare assertion that defendant Swetter had knowledge that defendant Swetter had failed to treat plaintiff. In fact, the record reflects the opposite. Plaintiff's medical record indicates that he was seen by defendant Sarraf and others for his back pain on several occasions. Defendant Swetter never personally examined plaintiff. He thus is entitled to rely upon the medical records which indicated that treatment was continuing, even if the treatment was unsuccessful from plaintiff's point of view, and even if plaintiff complained of the treatment to defendant Swetter.

### V.

For the foregoing reasons, plaintiff's Request for Entry of Default will be denied, and defendants' Motion for Summary Judgment will be granted. An appropriate Order will issue.