**Harvey P. SHORT, Plaintiff,**

v.

**Vickie GREENE, Jail Administrator, and Lieutenant Harvey and Sergeant Carter and Officer Frye and Officer Cook and Corporal Killen, II, and Officer Ferrell and Corporal Browser and Officer Hughes (the small Hughes), and John Doe I and John Doe II and Nurse Kathy and Prime-Care Medical of W.V., Defendants.**

Civil Action No. 2:07–00968.

United States District Court,
S.D. West Virginia,
at Charleston.

Sept. 22, 2008.

Harvey P. Short, Charleston, WV, pro se.

J. Dustin Dillard, John D. Hoffman, Flaherty, Sensabaugh & Bonasso, Chad M. Cardinal, Charleston, WV, David L. Wyant, Bailey & Wyant, Wheeling, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

JOHN T. COPENHAVER, JR., District Judge.

This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).

The court has reviewed the Proposed Findings and Recommendation entered by the magistrate judge on July 23, 2008. The magistrate judge recommends that the court order the following:

1. That defendant Cathy Booth's motion to dismiss for insufficient service of process be granted and that process be re-issued by the Clerk and defendant Booth properly served;

2. That the motion to dismiss filed by the "Jail defendants [1]" be:

---

**1.** The "Jail defendants" are Vickie Greene, Lieutenant Harvey, Sergeant Carter, Officer Frye, Officer Cook, Corporal Killen, II, Officer Ferrell, Corporal Browser, Officer Hughes, and an individual by the name of Farmer who does not appear in the style.

a. denied insofar as defendants allege a failure to exhaust administrative remedies;

b. granted insofar as defendants seek dismissal as to any claims made against them in their official capacities; and

c. granted to the extent of any claims against defendants for inadequate medical care and treatment as it appears plaintiff is not alleging any such claims against the Jail defendants;

3. That the motion for summary judgment filed by the Jail defendants be denied as to both liability and the defense of qualified immunity; and

4. That defendant PrimeCare's motion to dismiss for failure to state a claim be granted and that the residue of the PrimeCare motions be denied without prejudice as moot.

On August 1, 2008, the Jail defendants objected to the magistrate judge's recommendation concerning the exhaustion of administrative remedies. The Jail defendants appear to suggest that the magistrate judge concluded exhaustion was unnecessary under the Prison Litigation Reform Act of 1995 ("PLRA") inasmuch as plaintiff was alleging he was subjected to physical abuse. On August 7, 2008, plaintiff responded to the objection.

The magistrate judge's analysis is more properly construed, in context, as concluding that while the PLRA requires exhaustion of administrative remedies, the state law that supplies the relevant administrative scheme does not require resort to its process when a plaintiff institutes "a civil ... action alleging past ... physical ... abuse...." W. Va.Code § 25–1A–2(c).[2]

The text of the exhaustion requirement is undeniably broad. Title 42 U.S.C. § 1997e(a) provides pertinently as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail ... or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* *See Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir.2008) (stating that "to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)) (emphasis supplied); *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007) ("In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the ... [PLRA]. Among other reforms, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit.").

The question, then, is whether a state statute exempting a certain class of inmate claims from exhaustion should be further extended to excuse compliance with section 1997e(a)? The answer to that question lies in the meaning of the word "available[,]" and the federal policy underlying the PLRA exhaustion requirement.

From a definitional standpoint, the answer seems clear enough. In *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court appeared to suggest that the dictio-

---

**2.** The cited Code section provides materially as follows in its entirety:

(c) Notwithstanding any other provision of this code, no inmate shall be prevented from filing an appeal of his or her convic-

tion or bringing a civil or criminal action alleging past, current or imminent physical or sexual abuse....

W.Va.Code 25–1A–2(c).

nary meanings of "available" and "remedy[,]" as used in section 1997e(a), were imprecise. Nevertheless, the high Court appeared satisfied with a meaning of "available" that simply "require[d] the possibility of some relief for the action complained of ..." *Id.* at 738, 121 S.Ct. 1819. Despite the fact that a West Virginia inmate may apparently bypass state administrative processes when he or she alleges "past, current or imminent physical or sexual abuse[,]" it does not mean that the same processes would not possibly provide him some relief if he resorted to them.

From a policy standpoint, the proper outcome seems more apparent. The PLRA was spawned by an " 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.' " *Green v. Young,* 454 F.3d 405, 406 (4th Cir.2006) (quoting *Anderson v. XYZ Correctional Health Servs., Inc.,* 407 F.3d 674, 676 (4th Cir.2005)); *see also id.* at 405–06 ("To accomplish its goal of reducing the number of frivolous lawsuits, the PLRA placed three major hurdles in the path of prisoners seeking to challenge the conditions of their confinement[, including the] ... require[ment] [that] prisoners ... exhaust all administrative remedies before bringing suit."); *id.* at 408 ("Congress clearly viewed exhaustion as an important part of its efforts to curb the number of frivolous lawsuits brought by prisoners."); *Anderson,* 407 F.3d at 675 (noting that the PLRA "requires that inmates exhaust all

administrative remedies before filing an action challenging prison conditions under federal law.").

The PLRA exhaustion requirement has been described as playing a central role in Congress' efforts to stem the tide of what it considered an abuse by some inmates of the civil justice system. *See Jones,* 127 S.Ct. at 923 ("The invigorated exhaustion requirement is a 'centerpiece' of the statute....") (quoting *Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)("A centerpiece of the PLRA's effort 'to reduce the quantity ... of prisoner suits' is an 'invigorated' exhaustion provision, § 1997e(a).") (quoting *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002))).

The Supreme Court has also observed repeatedly the many salutary purposes served by the PLRA exhaustion requirement. *See, e.g., Jones,* 127 S.Ct. at 923 ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."); *Woodford,* 548 U.S. at 95, 126 S.Ct. 2378 ("When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").[3]

---

3. The court is also mindful of an additional benefit associated with encouraging resort to administrative processes in the correctional setting. For example, if a correctional officer inflicts an unwarranted assault on an inmate, it seems the better course to immediately, or within days, have that information in the hands of those managing the institution, as often occurs when an administrative grievance is filed. Institution officials might not otherwise learn of a potential problem respecting one of their employees until service

of process occurs weeks later, perhaps after others have been victimized in the meantime. *See also, e.g., Porter,* 534 U.S. at 530, 122 S.Ct. 983 ("An unwarranted assault by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision."); *id.* at 531, 122 S.Ct. 983 ("Do prison authorities have an interest in receiving prompt notice of, and opportunity to take action against, guard brutality that is somehow less compelling than their interest in

At bottom, Congress had significant policy objectives in mind when it enacted the PLRA. Stated in another way, Congress decided that

> [w]hat this country needs ... is fewer and better prisoner suits.... Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."

When Congress deemed exhaustion unimportant under the PLRA scheme, it spoke in explicit terms. For example, Congress enumerated four instances when a district judge might avoid examination of whether an inmate had exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, [1] frivolous, [2] malicious, [3] fails to state a claim upon which relief can be granted, or [4] seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."); *Green,* 454 F.3d at 408 (stating "we concluded in *Anderson* that Congress's leaving out references to exhaustion in some but not all of the subsections of § 1997e must be viewed as 'intentional congressional omission[s]' ....") (quoting *Anderson,* 407 F.3d at 680).

In sum, Congress could have provided for an exemption to the exhaustion requirement found in section 1997e(a) when the applicable state processes allow an inmate to immediately institute a civil action. In view of the use of the word "available[,]" along with the weighty, federal policy concerns that prompted the enactment of section 1997e(a), the court is reluctant to engraft onto the PLRA any such exception.[4]

Despite this ruling, the state has not demonstrated as a matter of fact and law that plaintiff has failed to exhaust his administrative remedies. Plaintiff has filed documents recently respecting that very question. The court, accordingly, concludes that the magistrate judge was correct regarding her ultimate recommendation concerning the Jail defendants' exhaustion defense found in their motion to dismiss.

Based upon the foregoing analysis, the court ORDERS that, with the exception of the analysis respecting West Virginia Code § 25–1A–2(c), the Proposed Findings and Recommendation be, and it hereby is, adopted and incorporated herein. It is further ORDERED as follows:

1. That defendant Cathy Booth's motion to dismiss for insufficient service of process be, and it hereby is, granted and that process be re-issued by the Clerk and defendant Booth be properly served;

---

receiving notice and an opportunity to stop other types of staff wrongdoing?").

4. The court is aware of Supreme Court precedent deferring to state law when examining *how* one exhausts a grievance:

Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary

from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones,* 127 S.Ct. at 923 (2007). The court does not understand language such as that found in *Jones* to support the conclusion that state law governs the question of *whether* administrative remedies must be exhausted when an inmate brings suit in a federal court.

2. That the motion to dismiss filed by the Jail defendants be, and it hereby is,
   a. denied without prejudice insofar as defendants allege a failure to exhaust administrative remedies;
   b. granted insofar as defendants seek dismissal as to any claims made against them in their official capacities; and
   c. granted to the extent of any claims against defendants for inadequate medical care and treatment as it appears plaintiff is not alleging any such claims against the Jail defendants;
3. That the motion for summary judgment filed by the Jail defendants be, and it hereby is, denied as to both liability and the defense of qualified immunity; and
4. That defendant PrimeCare's motion to dismiss for failure to state a claim be, and it hereby is, granted and that the residue of the PrimeCare motions be, and they hereby are, denied without prejudice as moot.

The Clerk is directed to forward copies of this written opinion and order to the *pro se* plaintiff, all counsel of record, and the United States Magistrate Judge.

### PROPOSED FINDINGS AND RECOMMENDATION

MARY E. STANLEY, United States Magistrate Judge.

This is a civil rights case in which Plaintiff alleges that he was subject to the use of excessive force at the Southwestern Regional Jail ("SWRJ") and to deliberate indifference to his serious medical needs. By Standing Order, it was referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition. By Order entered January 4, 2008 (docket # 5), Plaintiff's application to proceed without prepayment of fees was granted, and summonses were issued.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was incarcerated as a state pretrial detainee in December, 2007. Plaintiff's Complaint (# 2), filed pursuant to 42 U.S.C. § 1983 on December 31, 2007, contains two claims: (1) that staff used excessive force in a discriminatory manner against Plaintiff; and (2) that medical and correctional staff at the SWRJ denied him appropriate mental health care. Plaintiff filed an amended complaint on January 10, 2008(# 7), which corrected the date of the events from November 6 to December 6, 2007.

The paragraphs of Plaintiff's Complaint relating to the alleged excessive use of force state as follows:

1) In April 2007, the Plaintiff was placed on administrative segregation with full-restraints devices and three (3) officers present;

2) The Plaintiff must be handcuffed through the slot opening in the door before the cell door is opened. Then, the Plaintiff face backwards to be leg shackled and waist chained;

3) On December 6, 2007, the Plaintiff was locked down in his cell at Southwestern Regional Jail;

4) Around 4:10 p.m. on December 6, 2007 8 to 12 white officers approached the Plaintiff's cell. Three (3) officers were armed with a chemical agent (Pepper Mace);

5) One (1) officer told the Plaintiff to get on his bunk with Plaintiff's back facing the officer and the Plaintiff complied. However, Corporal Killen, II told the other officers to pepper mace the Plaintiff and three (3) different officers pepper maced the Plaintiff;

6) After being pepper maced by the three (3) officers, the Plaintiff laid on the floor with both hands behind his back;

7) Then, the 8 to 12 white officers stood outside of the Plaintiff's cell door to allow the Plaintiff to suffocate for about 3 minutes;

8) Then, the 8 to 12 white officers had the cell door opened and physically attacked the Plaintiff and put handcuffs and leg shackles on the Plaintiff as tight as they would go to stop blood circulation;

9) Officer Frye, Officer Hughes (the small Hughes) and Corporal Killen, II twisted the Plaintiff's wrists and ankles trying to break them causing severe pain and suffering;

10) These 8 to 10 white officers then brought the Plaintiff out of the cell and escorted him down the hallway dragging, kicking, stomping, and beating the Plaintiff;

11) Corporal Killen, II and John Doe I kept stepping on the leg shackles causing the Plaintiff to fall and injure himself. Corporal Killen, II also kicked the Plaintiff causing the Plaintiff to fall. Corporal Killen, II kicked, beat, and stomped the Plaintiff numerous times. Corporal Killen, II even stood on top of both of the Plaintiff's ankles to break them with his 300 plus pounds of body weight;

12) As a result of paragraph # 11, the Plaintiff sustained cuts into his flesh and leg and ankle injuries;

13) Officer Frye and Officer Hughes (the small Hughes) kept attacking the Plaintiff by pulling Plaintiff's wrists against the tight handcuffs cutting the Plaintiff's twisted wrists against the stainless steel handcuffs;

14) Once we reached the control center, Corporal Killen, II told Officer Frye, Officer Hughes to stop attacking the Plaintiff because the cameras in the booking area would record the attack. Corporal Killen, II told them to carry the Plaintiff into the bull-pen area in booking where no cameras are in the ceiling;

15) While in the bull-pen area, Corporal Killen, II, Officer Frye, Officer Hughes, Officer Ferrell, Officer Farmer, Officer Cook, John Doe I, John Doe II, and Sgt. Carter kicked, stomped, beat, and battered the Plaintiff. Officer Frye continued twisting Plaintiff's wrists to break them during the entire incident;

\* \* \*

18) Lt. Harvey and Ms. Green, Jail Administrator, authorized the physical attack on the Plaintiff by the officers;

19) Sergeant Carter supervised the physical attack by the white officers on December 6, 2007 and verbally threatened other inmates with the same torture on A–8–Pod;

20) Since Ms. Green arrived at S.W.R.J., she has given officers orders to pepper mace inmates if inmates even talk back to an officer;

21) Ms. Green has given orders to officers at S.W.R.J. to use pepper mace and attack inmates even without justification or good reason;

22) Ms. Green has established her own policy and procedure at S.W.R.J. allowing officers to beat and batter inmates and use pepper mace to torture and intimidate inmates at S.W.R.J.;

23) As a result of Ms. Green's policy, the Plaintiff was tortured on December 6, 2007 by 8 to 12 white officers who hate the Plaintiff due to his skin color;

24) During the attack, the Plaintiff heard a racial slur;

25) At the time of the attack on December 6, 2007, the Plaintiff was a pretrial detainee; and,

26) The Plaintiff states that he is in danger of serious and imminent bodily harm by the defendants at S.W.R.J. and prays for a transfer to avoid death or serious bodily injury;

27) The Plaintiff never resisted or fought the officers during the entire incident on December 6, 2007 and complied with all rules;

(*Id.* at 5–9).

The paragraphs in Plaintiff's Complaint alleging deliberate indifference to Plaintiff's serious medical needs, state as follows:

16) Nurse Kathy (the short nurse with the eyeglasses) witnessed the attack in the bull-pen area and refused the Plaintiff medical treatment after the beating despite the cuts, swollen hands on the Plaintiff's ankles and wrists and eye damages due to the chemical agent;

17) The Plaintiff did not receive medical treatment until December 18, 2007 after filing a grievance;

\* \* \*

28) Nurse Kathy of PrimaCare Medical of W.Va. was deliberately indifferent to the Plaintiff's serious medical needs after the attack and refused to treat the Plaintiff for his injuries sustained during the attack.

(*Id.* at 7–9). Plaintiff sued the defendants in their individual and official capacities for "$2,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages against each defendant." *Id.,* at 10.

### SERVICE OF PROCESS AND APPEARANCES BY COUNSEL

As required by Rule 4(c)(2), *Fed.R.Civ. P.,* and 28 U.S.C. § 1915(d), the Marshals Service served the summonses and complaint. They did so by serving Lt. Harvey at the SWRJ. The court appreciates some of the defendants' acceptance of service of process at that facility, even though the service may not have complied with the letter of the Rule. The motion to dismiss filed by "Nurse Kathy" will be addressed below.

### PENDING MOTIONS

The following motions are pending before the court:

1. Motion by defendant Cathy Booth to dismiss for insufficient service of process (# 22). Plaintiff filed an "Opposition" (# 32).

2. Motion to dismiss or in the alternative for summary judgment (# 23), filed by defendants Greene, Harvey, Carter, Frye, Cook, Killen, Ferrell, Farmer, Browser, and Hughes ("the Jail defendants"), supported by a memorandum (# 24). Plaintiff filed an "Opposition" (# 29), a Memorandum (# 30), and an affidavit (# 31). After issuance of a formal notice pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), set forth in the Order entered March 31, 2008 (# 33), Plaintiff was given the opportunity to supplement his filings, but he did not do so.

3. Motion by defendant PrimeCare Medical of West Virginia, Inc. ("Prime-Care"), to dismiss complaint and alternative motion for summary judgment (# 25), supported by exhibits (# 25–2 [Booth affidavit], and 25–3 [Johnston affidavit]) and a memorandum (# 26). Plaintiff's "Opposition" (# 29), Memorandum (# 30), and affidavit (# 31) described above, also respond to this Motion. Primecare filed a second Motion to dismiss and alternative motion for summary judgment (# 34), incorporating its original Motion, and clarifying that it addressed Plaintiff's amended complaint.

*"Nurse Kathy"—Motion to Dismiss*
*for Insufficient Service (# 22)*

The process receipt and return for defendant "Nurse Kathy" reflects that Deputy U.S. Marshal John Perrine served Lt. Harvey, described to be "[a] person of suitable age and discretion then residing in defendant's usual place of abode." (# 20.) This purported service was accomplished at the same time and on the same date as each summons for a Jail defendant. "Nurse Kathy," according to her Motion, is Cathy Booth, an employee of PrimeCare Medical of W. Va. It is apparent that Deputy Perrine did not properly serve Ms. Booth pursuant to Rule 4.

Plaintiff requests that process be re-issued and properly served on Ms. Booth (# 32).

The undersigned proposes that the presiding District Judge **FIND** that Ms. Booth was not properly served. It is respectfully **RECOMMENDED** that the motion to dismiss for insufficient process be granted, that process be re-issued by the Clerk, and that Ms. Booth be served. The court notes that defendant PrimeCare was not sufficiently served, but in the interest of judicial efficiency, it accepted the service and filed its motions. It is requested that counsel for Ms. Booth consider accepting service of process on her behalf.

*The Jail Defendants' Motion to*
*Dismiss/for Summary*
*Judgment (# 23)*

The Jail Defendants raise the following grounds for dismissal or judgment in their favor: failure to exhaust administrative remedies; qualified good faith immunity; Eleventh Amendment; failure to state a claim upon which relief can be granted; Plaintiff was not subjected to cruel and unusual punishment. (Motion, # 23.) Their alternative motion is ambiguous and confusing as to which grounds apply to dismissal under Rule 12 and which

grounds justify entry of judgment under Rule 56. The undersigned will address the arguments of failure to exhaust administrative remedies, Eleventh Amendment, and failure to state a claim upon which relief can be granted with respect to Rule 12. Qualified immunity and cruel and unusual punishment will be discussed in the context of Rule 56.

**Exhaustion of Administrative Remedies**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("the PLRA") states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means "... conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pre-trial release, or diversionary program." 28 U.S.C. § 1915A(c).

In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth,* the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

In *Porter v. Nussle,* 534 U.S. 516, 531, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong." Not only must a prisoner exhaust his administrative remedies, but he must also do so *properly.* Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits." *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002)). [Emphasis in the original.] ) That is, a prisoner must complete the administrative process in accordance with the applicable procedural rules of the process, including the deadlines.

The Court ruled in *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. *Jones* also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. *Id.,* at 923. If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims. *Id.,* at 924–26.

The West Virginia statute pertaining to the requirement that prisoners exhaust remedies is found at West Virginia Code § 25–1A–2(a), which provides as follows: (a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; *Provided,* That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

The Code also requires the Commissioner of the Division of Corrections and the Executive Direction of the Regional Jail Authority to establish administrative procedures for processing prisoners' complaints about the conditions of their confinement. W. Va.Code § 25–1A–2(b).

West Virginia Code § 25–1A–2(c) states: (c) Notwithstanding any other provision of this code, *no inmate shall be prevented from ... bringing a civil or criminal action alleging past, current or imminent physical or sexual abuse;* if such a civil or criminal action is ultimately dismissed by a judge as frivolous, then the inmate shall pay the filing costs associated with the civil or criminal action as provided for in this article. [Emphasis added].

Because Plaintiff's Complaint alleges physical abuse, the exhaustion requirement does not apply to his claims.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has brought a civil action alleging past physical abuse, and that the requirement to exhaust administrative remedies does not apply.

### Eleventh Amendment and *Will* Doctrine

The Jail Defendants assert that, as State employees, they are immune from liability for actions taken in their official capacities. Plaintiff's Opposition simply asserts that his action "is *not* barred by the 11th Amendment of the United States Constitution and the Will Doctrine." (# 29, at 2.) His memorandum states that he "sued all the Defendants in their individual

capacities. Therefore, the 11th Amendment is not applicable." (# 30, at 9.)

The Supreme Court, reading § 1983 in conjunction with the Eleventh Amendment, ruled in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." A state official sued in his individual capacity is not protected by the Eleventh Amendment and is a "person" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

The undersigned proposes that the presiding District Judge **FIND** that the Jail Defendants in their official capacities are not "persons" under § 1983.

## Failure to State a Claim Upon Which Relief Can Be Granted

The Jail defendants' motion to dismiss for failure to state a claim is addressed to Plaintiff's allegations regarding medical care. The three paragraphs of Plaintiff's amended complaint which relate to medical care accuse only "Nurse Kathy" of deliberate indifference and make no allegations against the Jail defendants.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff makes no claim against the Jail defendants with respect to medical care for the December 6, 2007 incident.

## Motion for Summary Judgment— Standard of Review

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c) (2007). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed.R.Civ.P. 56(c); *Id.* at 322–23, 106 S.Ct. 2548.

> [The] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir.1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.1986). Rather, the party

opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## Qualified Immunity and Cruel and Unusual Punishment

When a defendant asserts the defense of qualified immunity, the court must employ the two step analysis set forth by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first question is whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. If the answer to that question is "yes," the second question is whether the right was clearly established at the time of the events at issue. Qualified immunity is ordinarily resolved at the summary judgment stage. *Schultz v. Braga,* 455 F.3d 470, 476 (4th Cir.2006).

The standard for determining whether the use of force against a pretrial detainee violates a constitutional right has been established since *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which the Supreme Court held that "the proper inquiry is whether those conditions [of confinement] amount to punishment of the detainee." Conditions of confinement of state pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. 441 U.S. at 535 n. 16, 99 S.Ct. 1861. However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach. As noted by the United States Court of Appeals for the Fourth Circuit in *Riley v. Dorton,* 115 F.3d 1159, 1166 (4th Cir.1997), "[b]oth seek to balance the rights of prisoners and pre-trial detainees against the problems created for officials by the custodial context."

The Fourth Circuit further explained the appropriate standard in *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998):

> To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [a plaintiff] must show that Defendants "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Plaintiff's amended complaint and affidavit allege several actions by various defendants which suggest that he believes that the officers were intent on inflicting pain and suffering. In addition to alleging the unnecessary use of pepper spray, Plaintiff states that he was dragged, kicked, stomped, beaten, and tripped. (## 7, 31.) Moreover, he suggests racial animus. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the facts, taken in the light most favorable to Plaintiff, without a finding as to his credibility, show that the officers' conduct was an infliction of unnecessary and wanton pain and suffering which violated Plaintiff's right, as a pretrial detainee, not to be punished.

A pre-trial detainee cannot prevail on a Fourteenth Amendment excessive force claim if his injury is *de minimus. Riley,* 115 F.3d at 1166; *Taylor, id.* Quoting

from the Supreme Court's opinion in *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the *Riley* court stated:

> "[N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action".... To permit those in custody to bring excessive force claims without any showing of injury would violate that very principle. The *de minimus* nature of Riley's alleged injuries cannot be squared with Riley's need to demonstrate excessive force amounting to punishment. *Bell,* 441 U.S. at 535, 99 S.Ct. at 1871–72. Punishment must mean something more than trifling injury or negligible force.

115 F.3d at 1167.

Plaintiff's affidavit states that, in addition to suffering the irritation of the pepper spray, he sustained cuts on his legs, ankles, and wrists. (# 31, ¶¶ 7, 14, 18.) His hands were swollen. *Id.,* ¶ 18. He asserts that despite his requests for medical care, he was denied treatment until December 18, 2007, to allow time for his cuts to heal. *Id.,* ¶ 51. Under the circumstances, the undersigned cannot conclude that Plaintiff's injuries were *de minimis.*

In support of their argument that the Jail defendants are entitled to summary judgment, they attach various incident reports and affidavits as to the circumstances of the pepper spraying of Plaintiff, his removal from his cell, and related matters. (# 23 and exhibits attached thereto.) Plaintiff's affidavit (# 31) states that the Jail defendants' incident reports and affidavits are false and that his amended complaint is true. Allegations of excessive force typically require careful investigation of the material facts. Faced with competing affidavits as to those facts, the undersigned must conclude that there is a genuine issue as to the material facts and that summary judgment is inappropriate.

The undersigned proposes that the presiding District Judge **FIND** that, taking the facts in the light most favorable to Plaintiff, the Jail defendants are not entitled to qualified immunity, and that Plaintiff has made the necessary showing that his injuries from the force used against him were more than *de minimus.*

*Recommendations*

For these reasons, it is respectfully **RECOMMENDED** that the presiding District Judge:

1. Deny the Jail defendants' Motion to Dismiss for failure to exhaust administrative remedies;

2. Grant the Jail defendants' Motion to Dismiss them *in their official capacities only;*

3. Deny the Jail defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted with respect to medical care because it appears that Plaintiff is not making such a claim against them;

4. Deny the Jail defendants' Motion for Summary Judgment and deny them qualified immunity.

*PrimeCare's Motions to Dismiss/Summary Judgment (## 25 and 34)*

### Motion to Dismiss

PrimeCare's motions to dismiss (addressing the original complaint and the amended complaint) assert that Plaintiff has failed to state a cause of action alleging deliberate indifference to his serious medical needs. Plaintiff's Opposition (# 29) does not address this argument.

The undersigned has quoted the three paragraphs of Plaintiff's amended complaint that set forth his allegations that he was denied medical care. None of the paragraphs mentions PrimeCare. It is well-settled that the doctrine of *respondeat*

*superior* does not apply in civil rights actions.

Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury.

*Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's amended complaint fails to state a claim upon which relief can be granted as to defendant PrimeCare. It is not necessary to address PrimeCare's other arguments in support of dismissal or summary judgment.

*Recommendations*

It is respectfully **RECOMMENDED** that the presiding District Judge:

5. Grant PrimeCare's Motions to Dismiss for failure to state a claim upon which relief can be granted and deny the remainder of the Motions to Dismiss as moot;

6. Deny PrimeCare's alternative Motions for Summary Judgment as moot.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have ten days (filing of objections) and three days (service/mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir.1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984). Copies of such objections shall be provided to Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

Dated: June 23, 2008.